IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| WARREN VINCENT LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-07-773-W |
| v. | ) | |
| | ) | |
| SHANE WYATT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

THIRD SUPPLEMENTAL REPORT AND RECOMMENDATION

Before the undersigned is Defendants McConnell, McGill, Daugherty, Baker, and Ely's Motion for Summary Judgment filed July 31, 2008 (Doc. # 131) pursuant to Fed. R. Civ. P. 56 and Supplemental Brief (Doc. # 217) in support of their Motion.[1]  In their Supplemental Brief, Defendants McConnell, McGill, Daugherty, Baker, and Ely seek summary judgment with respect to Plaintiff's allegation in count II of the Amended Complaint that these Defendants failed to protect him from another detainee, Mr. Barger, who allegedly assaulted Plaintiff on August 6, 2006.  Plaintiff has filed a response (Doc. #157) and supplemental responsive brief (Doc. # 226), and the matter, which has been

---

[1] By Order entered July 7, 2009, Plaintiff and Defendants McConnell, McGill, Daugherty, Baker and Ely were directed to file supplemental briefs and supporting documentary evidence with respect to the assertion in these Defendants' Motion for Summary Judgment that they are entitled to summary judgment pursuant to Fed. R. Civ. P. 56 due to Plaintiff's failure to exhaust available administrative remedies concerning his claim alleging these Defendants failed to protect him in August 2006 from harm inflicted by Monty (spelled "Monte" and "Montie" in Plaintiff's papers) Barger, an inmate who allegedly suffered from hepatitis C viral infection.

referred to the undersigned Magistrate Judge for initial proceedings pursuant to 28 U.S.C. § 636(b)(1)(B), is at issue.

Also before the undersigned is the Supplemental Brief filed by Defendant Wyatt (Doc. # 216) in support of Defendant Wyatt's Motion for Summary Judgment (Doc. # 132). In this pleading, Defendant Wyatt renews his Motion seeking summary judgment pursuant to Fed. R. Civ. P. 56 with respect to Plaintiff's claims against him for monetary relief in his official capacity.[2] Plaintiff has responded to the Motion (Doc. # 157) and filed a supplemental responsive brief. The matter, which has been referred to the undersigned for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), is at issue.

I. Standard of Review

Summary judgment may be granted only where the pleadings and documentary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court reviews the evidence and inferences drawn from the record in the light most favorable to the nonmoving party. Jiron v. City of Lakewood, 392 F.3d 410, 414 (10th Cir. 2004). A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts which might affect the outcome of the suit under the

---

[2]The Court has previously granted summary judgment in favor of Defendant Wyatt in his individual capacity with respect to all claims and in his official capacity to the extent Plaintiff sought injunctive and declaratory relief against this Defendant.

governing law." Id. Additionally, if the moving party demonstrates an absence of evidence regarding an issue on which the nonmoving party will bear the burden of proof at trial, the nonmoving party can defeat summary judgment only by designating with evidence outside of the pleadings "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[3]

II. Exhaustion of Administrative Remedies

Defendants McConnell, McGill, Daugherty, Baker, and Ely contend that Plaintiff has not exhausted available administrative remedies with respect to his claim in the Amended Complaint of failure to protect him from Mr. Barger.  The Prison Litigation Reform Act of 1995 ("PLRA"), enacted in 1996, directs that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This provision applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).  Moreover, exhaustion of administrative remedies under the PLRA is required for all inmates seeking relief in federal district court regardless of the type of relief available under the institutional administrative procedure. Booth v. Churner, 532 U.S. 731, 741 (2001).

---

[3]In a prisoner civil rights case such as this one, the plaintiff's complaint is treated as an affidavit if it allege facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury. Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991).

In consideration of the parties' pleadings and supporting evidentiary documents, the following facts are not in dispute with respect to Defendants McConnell, McGill, Daugherty, Baker, and Ely's Motion for Summary Judgment:

1. Plaintiff was booked into the Grady County Detention Center ("GCDC") on May 18, 2006, and released from GCDC on January 29, 2007, after entering a plea of guilty to the offense of assault and battery.

2. While being detained in GCDC, Plaintiff states that he was bitten by another detainee, Monty Barger, on or about August 6, 2006, and that Mr. Barger informed Plaintiff he had previously been infected with the hepatitis C virus.

3. GCDC has a grievance procedure which requires detainees to submit written grievances concerning their complaints.

4. GCDC utilizes both "request to staff" and "inmate grievance" forms in its grievance procedure.

5. Plaintiff did not submit any written requests for protection from Mr. Barger or commence the GCDC grievance process regarding Mr. Barger prior to the alleged biting incident on August 6, 2006.

6. On or about September 14, 2006, Plaintiff submitted a written "request for medical treatment" form requesting the results of a hepatitis C blood test and stating that he wanted to file criminal charges against Mr. Barger for biting him on August 6, 2006.

7. On or about December 25, 2006, again on or about February 19, 2007, again on or about February 27, 2007, and again on or about March 1, 2007, Plaintiff submitted written

"request for medical treatment" forms stating that he wanted a follow-up blood test for the hepatitis C virus.

8. On or about February 27, 2007, Plaintiff submitted a "request to staff" form in which he stated that he wanted to "file charges" on Mr. Barger for "biting me on 8-6-06 - said he had Hepitic [sic] C! Need follow-up blood screen!"

9. On or about March 1, 2007, Plaintiff submitted a grievance stating that he wanted a "follow-up blood test because Montie [sic] Barger bit me and said he had Hep-C on 8-6-06" and that he wanted "to file charges on Montie [sic] Barger...."

10. On or about March 9, 2007, Plaintiff submitted a written "request for medical treatment" form stating that he wanted to file criminal charges against Mr. Barger and that he wanted a follow-up blood test for the hepatitis C virus.

11. On or about March 1, 2007, Plaintiff submitted a written "inmate grievance" form stating he wanted to file criminal charges against Mr. Barger and that he wanted a follow-up blood test for the hepatitis C virus.

12. On or about April 3, 2007, Plaintiff submitted a written "inmate grievance" form stating that he wanted to file charges against Mr. Barger.

13. On or about April 10, 2007, Plaintiff submitted a written "request to staff" form stating that he wanted to file criminal charges against Mr. Barger and that he wanted a follow-up blood test for the hepatitis C virus "from Montie [sic] Barger bitting [sic] me on 8-6-06."

14. On or about April 10, 2007, and again on or about June 4, 2007, Plaintiff

5

submitted written "inmate grievance" forms stating that he wanted to file criminal charges against Mr. Barger and that he wanted a follow-up blood test for the hepatitis C virus.

15. Plaintiff never submitted any written grievances prior to August 6, 2006, requesting protection from Mr. Barger, and Plaintiff did not submit any written grievances after August 6, 2006, in which he asserted that Defendants had failed to protect him from Mr. Barger.

Although Plaintiff contends in his supplemental responsive pleading that he was unaware of the GCDC grievance procedure, the record shows that during his detention at GCDC Plaintiff submitted numerous request to staff and grievance forms on other issues.[4] Plaintiff complained in request to staff and grievance forms when he did not receive responses to his many previous grievances. The record demonstrates that Plaintiff was familiar with the GCDC grievance procedures. See Musacco v. Torres, 2009 WL 1668571 (10th Cir. June 16, 2009)(unpublished op.)(inmate's submission of multiple grievances showed he was adequately familiar with prison's grievance procedures). However, Plaintiff did not grieve the alleged constitutional violation raised in his Amended Complaint that Defendants failed to protect him from Mr. Barger. Plaintiff merely stated in the request to staff and grievance forms submitted to GCDC officials during his detention that he wanted to file criminal charges against Mr. Barger and that he wanted an additional laboratory test

---

[4]In fact, Plaintiff even alleges in one pleading that Defendants retaliated against him for using GCDC's grievance procedure. See "Plaintiff [sic] Objection to the Defendant's [sic] Summary Judgment" (Doc. # 157), at 3. Plaintiff also admitted in this pleading that he "used the grievance" procedure at GCDC. Id., at 10.

to confirm he had not contracted the hepatitis C virus. These forms were not sufficient to provide Defendants with notice of the alleged failure-to-protect claim. Plaintiff refers to his deposition testimony to support his allegation that he had submitted grievances to alert Defendants to "this threat" from Mr. Barger. Plaintiff's Supplemental Brief, at 6-7. However, Plaintiff's deposition testimony does not support this allegation. At his deposition, Plaintiff stated that he only verbally complained about Mr. Barger prior to the alleged biting incident and that after the alleged biting incident he only requested (1) medical treatment for the "bite" and to "get a hepatitis shot" and (2) "to file charges on him...." Defendants McConnell, McGill, Daugherty, Baker, and Ely's Supplemental Brief (Doc. # 217), Ex. 1 (Deposition of Plaintiff), at 95-105. Thus, Plaintiff did not exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a), and Defendants McConnell, McGill, Daugherty, Baker, and Ely are entitled to summary judgment on this basis with respect to Plaintiff's failure to protect claim.

III. Official Capacity - Defendant Wyatt

In his Motion for Summary Judgment, Defendant Wyatt seeks summary judgment with respect to Plaintiff's cause of action against him for monetary damages in his official capacity. In consideration of the parties' pleadings and documentary evidence, it is undisputed that:

1. Defendant was Jail Administrator at GCDC at all times relevant to Plaintiff's claims asserted in his Amended Complaint.

2. On August 20, 2002, pursuant to Okla. Stat. tit. 60, § 176 *et seq.*, the Grady County

Board of Commissioners formed the Grady County Criminal Justice Authority ("GCCJA") for the purposes of operating, regulating, and administering the GCDC.

3. The Grady County Criminal Justice Authority has final policymaking authority with regard to GCDC and Defendant Wyatt has no final policymaking authority concerning GCDC. Defendant Wyatt's Motion for Summary Judgment, at 2 (Uncontroverted Facts), Ex. 2 (Deposition of Plaintiff), at 155.

By suing Defendant Wyatt in his official capacity, Plaintiff is attempting to assert a cause of action under 42 U.S.C. § 1983 against the governmental body employing Defendant Wyatt, in this case, GCCJA. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); Thompson v. City of Lawrence, Kan., 58 F.3d 1511, 1517 (10th Cir. 1995). The GCCJA is a governmental entity for purposes of a 42 U.S.C. § 1983 action because it was created under Oklahoma law as a public trust. See Beedle v. Wilson, 422 F.3d 1059, 1065 (10th Cir. 2005)(recognizing hospital created as Oklahoma public trust under Okla. Stat. tit. 19, § 176 is governmental entity subject to § 1983 action). See also Okla. Stat. tit. 51, §152(10)(as amended)(recognizing public trust created for benefit of city, town, school district, or county is "political subdivision").

A municipality or governmental entity may be liable for § 1983 constitutional deprivations only where "'the unconstitutional actions of the municipal employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action.'" Orr v. City of Albuquerque, 417 F.3d 1144, 1153 (10th Cir. 2005)(quoting Ledbetter v. City of

Topeka, 318 F.3d 1183, 1189 (10th Cir. 2003)). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403-404 (1997). "Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Id. at 404.

Plaintiff alleges in his Amended Complaint that Defendant Wyatt is liable to Plaintiff because he is a "policymaker, manage [sic] day to day operations and excuting [sic] policy, training of staff, and is responsible for all policies, customs, conditions of jail, actions of staff, safety of inmates, medical care." Amended Complaint, at 1. Although he names Defendant Wyatt in counts II, III, and IV of the Amended Complaint, the only policy or custom alleged by Plaintiff is a "policy of overcrowding conditions" and inadequate "training of staff in conditions of proper constitutional conditions and training of inmates in grievance procedures, disciplinary procedures and rules...." Amended Complaint, at 5, 6.

"The touchstone for determining 'official policy' is 'distinguish[ing] acts of the *municipality* from acts of *employees* of the municipality, and thereby mak[ing] clear that municipal liability is limited to action for which the municipality is actually responsible.'" Melton v. City of Oklahoma City, 879 F.2d 706, 723 (10th Cir. 1989)(quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986)), cert. denied, 502 U.S. 906 (1991). "It is only when the 'execution of the government's policy or custom ... inflicts the injury' that the

municipality may be held liable under § 1983." City of Canton v. Harris, 489 U.S. 378, 385 (1989)(internal citation omitted). Although an "inadequate training" claim can provide the basis for § 1983 liability in "limited circumstances," id. at 387, in order to prevail against the county on such a claim a plaintiff must show that "'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [county] can reasonably be said to have been deliberately indifferent to the need' for additional training." Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996)(quoting Harris, 489 U.S. at 390).

Plaintiff has not alleged "conduct properly attributable to the municipality," such as action taken by an employee with final decisionmaking authority, that could constitute a "policy" attributable to GCCJA or any "deliberate conduct" by GCCJA that was the "moving force" behind his alleged injuries. Brown, 520 U.S. at 404. Nor has Plaintiff provided evidence of deliberate indifference by GCCJA to an obvious need for more or different training. Plaintiff has generally alleged a policy or custom of overcrowding at the GCDC. However, even assuming the truth of Plaintiff's allegation that GCDC was overcrowded, Plaintiff has not shown that GCCJA had knowledge of a policy or practice of overcrowding at GCDC that was the "moving force" behind Plaintiff's alleged injuries. Additionally, Plaintiff's unsupported allegations of inadequate training of staff in "constitutional conditions" fail to present evidence sufficient to overcome Defendant Wyatt's Motion for Summary Judgment concerning Plaintiff's official capacity claims. Plaintiff failed to address Defendant Wyatt's Motion for Summary Judgment in his responsive brief. In light of the

undisputed facts, Plaintiff's conclusory, general allegations in his Amended Complaint fail to demonstrate that any Defendant had final policymaking authority at GCDC and fail to connect any Defendant to a failure to train jail employees resulting in direct injury to Plaintiff.  Accordingly, Defendant Wyatt's Motion for Summary Judgment with respect to Plaintiff's claims for monetary damages against him in his official capacity should be granted.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Motion for Summary Judgment (Doc. # 131) by Defendants McConnell, McGill, Daugherty, Baker, and Ely by GRANTED and that judgment enter in favor of these Defendants and against the Plaintiff. It is further recommended that the Motion for Summary Judgment (Doc. # 132) by Defendant Wyatt be GRANTED and that judgment enter in favor of Defendant Wyatt and against the Plaintiff. The parties are advised of their respective right to file an objection to this Third Supplemental Report and Recommendation with the Clerk of this Court by  September 30th, 2009, in accordance with 28 U.S.C. § 636 and LCvR 72.1.  The failure to timely object to this Third Supplemental Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Third Supplemental Report and Recommendation partially disposes of the issues

referred to the undersigned Magistrate Judge in the captioned matter.[5]

ENTERED this __10th__ day of __September__, 2009.

_____
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE

---

[5]There is one remaining "John Doe" Defendant in this matter.